IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JUAN ANTONIO CANO,<br><br>Defendant. | CR. NO. 07-000624 JAO (02)<br><br>**ORDER DENYING WITHOUT PREJUDICE DEFENDANT'S MOTION FOR REDUCTION IN SENTENCE** |

**ORDER DENYING WITHOUT PREJUDICE DEFENDANT'S MOTION FOR REDUCTION IN SENTENCE**

Defendant Juan Antonio Cano ("Defendant") filed a Motion for Reduction in Sentence ("the Motion"), seeking compassionate release pursuant to 18 U.S.C. § 3582.  ECF No. 116.  The Court decides this motion without a hearing pursuant to Local Rule 7.1(c).  For the following reasons, the Motion is DENIED WITHOUT PREJUDICE.

I.      BACKGROUND

A.      Procedural History

On November 29, 2007, the Grand Jury returned an Indictment against Defendant and two others, alleging violations of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A).  ECF No. 7.  The Government filed a Special Information as to Prior

Drug Conviction Pursuant to 21 U.S.C. § 851.  ECF No. 51.[1]  Defendant pled guilty on July 3, 2008, admitting that he was guilty of conspiracy to distribute and possess with intent to distribute 500 grams or more of a substance and mixture containing a detectable amount of methamphetamine.  ECF No. 55.  District Judge Ezra granted the Government's Motion for Downward Departure, ECF No. 82, and sentenced Defendant to a term of 270 months in prison.  ECF No. 85.  The sentence included a 10-year supervised release term.  *Id.*  District Judge Watson granted Defendant's Motion for Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(2), and reduced his sentence to 240 months.  ECF No. 109.

Defendant filed the Motion on November 16, 2020.  ECF No. 116.  At the time he filed the Motion, Defendant was housed at the Federal Correctional Institution at Terminal Island ("FCI Terminal Island") but was later transferred to the Metropolitan Correctional Center at San Diego ("MCC San Diego").  *See* ECF No. 126.  Defendant had sought compassionate release from the warden at FCI Terminal Island,[2] which was denied on August 12, 2020.  *See* ECF Nos. 111-1, 111-2, 111-3.  The Government does not challenge that he has exhausted his

---

[1]  Defendant's prior drug conviction was for Possession for Sale of a Controlled Substance (methamphetamine).  ECF No. 51-2.

[2]  The Motion states that the requests were filed with the warden "at FCI Sheridan," *see* ECF No. 116-1 at 14, but the Court believes that must be an inadvertent error.

administrative remedies as required by 18 U.S.C. § 3582(c)(1).[3]  *See* ECF No. 124 at 20.

The Government filed a Response on December 14, 2020, after seeking an extension of its response deadline.  ECF Nos. 121, 123, 124.  On December 21, 2020, Defendant filed a Reply.  ECF No. 125.  Defendant was also allowed leave to supplement the record with updated information regarding his facility of incarceration.  ECF Nos. 126, 127.

B.    Defendant's Background

1.    Defendant's Current Condition

It is undisputed that Defendant is 48 years old, has twice tested positive for COVID-19 (in late April and late September), had a Body Mass Index (BMI) of 33.8 in July of 2020 (prior to contracting COVID-19) and more recently had a BMI of 29.9 (the weight loss likely due to COVID-19).  ECF Nos. 116-1 at 9, 11-13. His other relevant medical conditions include hypertension and asthma.[4]  ECF No. 116-1 at 9; ECF No. 124 at 21.  He takes several medications for asthma, chronic

---

[3]  The Government has not sought leave to address the question of whether Defendant's transfer to another institution affects the exhaustion analysis here.  In any event, the Court concludes it does not.  *See, e.g.*, *United States v. Partida*, No. CR-17-08260-001-PCT-DGC, 2020 WL 3050705, at *2–3, *4 & n.5 (D. Ariz. June 8, 2020); *United States v. Davidson*, Nos. 2:16-cr-00139-2, 2:17-cr-00334, 2:20-cv-00327, 2020 WL 4877255, at *6–7 (W.D. Pa. Aug. 20, 2020).

[4]  As discussed below, the severity of Defendant's asthma is disputed.

coughing, hypertension, rhinitis, allergies, and acid reflux.  ECF No. 116-1 at 9–10.

In a sworn statement, Defendant describes in great detail the manifestations of his second bout with COVID-19, as well as the medical attention he did (and did not) receive.  *See* ECF No. 116-4.

### 2.     Defendant's History and Post-sentencing Behavior

In his Plea Agreement, Defendant admitted that, over the course of two years and 19 trips between California and Hawaiʻi, he transported approximately 38 pounds of methamphetamine to Honolulu.  ECF No. 55.  It appears he did so at the behest of his co-defendant, because he provided the proceeds from the sales of the methamphetamine to him.  *Id.*

Defendant has already served at least 13 years of his 20-year sentence.  *See* ECF No. 116-1.  He is scheduled to be released in approximately four years.  *See* Federal Bureau of Prisons, https://www.bop.gov/inmateloc (follow "Find By Number" tab; then search for BOP Register Number "63722-097") (last visited Jan. 8, 2021).

Since his incarceration, Defendant has had four violations:  (1) a 2009 incident where he was sanctioned for disruptive conduct; (2) a 2011 violation for possessing a cellular telephone; (3) a 2011 incident for being absent from an

assignment; and (4) a March, 20, 2020 incident for possessing an unauthorized item.  *See* ECF No. 124-3.

      C.      Conditions at MCC San Diego

As of this writing, MCC San Diego has 4 active cases among inmates and 6 active cases among staff.  *See* Federal Bureau of Prisons, https://www.bop.gov/coronavirus (mouse over "MCC San Diego") (last visited Jan. 8, 2021).  It presently has a population of 647 inmates.  *See* Federal Bureau of Prisons, https://www.bop.gov/locations/institutions/sdc (last visited Jan. 8, 2021).

## II.    DISCUSSION

      A.      The First Step Act

Prior to the passage of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 ("First Step Act"), only the BOP could move for an inmate's compassionate release.  *See* 18 U.S.C. § 3582(c)(1)(A) (2012).  But the First Step Act amended, among other things, 18 U.S.C. § 3582(c)(1)(A), which now allows inmates to seek compassionate release:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that –

> (i) extraordinary and compelling reasons warrant such
> a reduction; . . .
> *and that such a reduction is consistent with
> applicable policy statements issued by the
> Sentencing Commission*[.]

18 U.S.C. § 3582(c)(1)(A) (2018) (emphasis added).

United States Sentencing Guidelines ("USSG") section 1B1.13 ("the
Guideline") addresses Section 3582 motions, but the Sentencing Commission has
not updated the Guideline since the passage of the First Step Act.[5]  The Guideline
allows for a sentence reduction for compassionate release "[u]pon motion of the
Director of the Bureau of Prisons . . . if, after considering the factors set forth in 18
U.S.C. § 3553(a), to the extent that they are applicable, the court determines that . .
. extraordinary and compelling reasons warrant the reduction[.]"  USSG § 1B1.13.
It further outlines four categories of extraordinary and compelling reasons in the
application notes:  the defendant's medical condition, the defendant's age (at least
65 years old), family circumstances, and "other reasons."  *Id.*, comment. (n.1).
This last category is known as the "catch-all" clause.  *United States v. Brooker*,
976 F.3d 228, 232 (2d Cir. 2020).  The Guideline notes also explain that the catch-

---

[5]  The Commission's failure to amend the Guideline is likely due to its lack of
sufficient members for a quorum.  *See U.S. Sentencing Commission*, "About the
Commissioners," https://www.ussc.gov/commissioners (last visited Jan. 8, 2021)
(listing only 1 voting commissioner); *U.S. Sentencing Commission*,
"Organization," https://www.ussc.gov/about/who-we-are/organization (last visited
Jan. 8, 2021) ("The affirmative vote of at least four members of the Commission is
required to promulgate amendments to the sentencing guidelines.").

all clause applies when, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the [other] reasons[.]"  USSG § 1B1.13, comment. (n.1).  In other words, according to the Guideline, wide discretion regarding what constitutes an "extraordinary and compelling reason" rests only with the BOP Director.

The change in the compassionate release statute and lack of amendment to the Guideline begs the question of whether the Guideline applies to *all* Section 3582 motions—including those brought by defendants.  The Court concludes that it does not.

Turning first to the plain language of the Guideline, *see United States v. Cruz-Gramajo*, 570 F.3d 1162, 1167 (9th Cir. 2009), its application is clearly limited to compassionate release motions filed by the BOP Director.  *See* USSG § 1B1.13 ("Upon motion of the Director . . . .").  And this plain reading now has support from four Circuits and numerous district courts within the Ninth Circuit.  *See Brooker*, 976 F.3d at 235 ("Turning to the text of the Guideline § 1B1.13, it is manifest that its language is clearly outdated and cannot be fully applicable.  The very first words of the Guideline are '[u]pon motion of the Director of the Bureau of Prisons.'" (alteration in original and citation omitted)); *see United States v. Jones*, No. 20-3701, 2020 WL 6817488, at *8 (6th Cir. Nov. 20, 2020)

7

("Examining the four corners of § 1B1.13 alone, it becomes immediately apparent that the policy statement does not wholly survive the First Step Act's promulgation.  The first sentence of § 1B1.13 predicates the entire policy statement on the Director of BOP's filing a motion for compassionate release." (citation omitted)); *United States v. McCoy*, Nos. 20-6821, 20-6869, 20-6875, 20-6877, 2020 WL 7050097, at *7 (4th Cir. Dec. 2, 2020); *United States v. Gunn*, No. 20-1959, 2020 WL 6813995, at *2 (7th Cir. Nov. 20, 2020) ("Section 1B1.13 addresses motions and determinations of the Director, not motions by prisoners.  In other words, the Sentencing Commission has not yet issued a policy statement 'applicable' to Gunn's request.  And because the Guidelines Manual lacks an applicable policy statement, the trailing paragraph of § 3582(c)(1)(A) does not curtail a district judge's discretion.  Any decision is 'consistent with' a nonexistent policy statement."); *see also, e.g.*, *United States v. Parker*, 461 F. Supp. 3d 966, 978–79 (C.D. Cal. 2020) (collecting cases and rejecting the argument "that pre-[First Step Act] categories contained in U.S.S.C. § 1B1.13 limit [a court's] discretion to determine whether an inmate has raised 'extraordinary and compelling' circumstances that justify the modification of her sentence." (quoting *United States v. Wade*, No. 2:99-cr-00257-CAS-3, 2020 WL 1864906, at *5 (C.D. Cal. Apr. 13, 2020)); *United States v. Rodriguez*, 424 F. Supp. 3d 674, 681–82 (N.D. Cal. 2019) (collecting cases); *United States v. Manzo*, Nos. 2:07-CR-02042-

8

LRS-2, 2:07-CR-02071-LRS-1, 2020 WL 6786898, at *2 (E.D. Wash. Nov. 18, 2020); *United States v. Hernandez*, CR. NO. 13-00511(1) JMS, 2020 WL 3453839, at *4 (D. Haw. June 24, 2020) (collecting cases).

The plain language of the statute itself does not alter this conclusion. The First Step Act directs the Court to evaluate whether "a reduction is consistent with *applicable* policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A) (emphasis added). Because the Guideline does not apply here, the Court is not restricted by it or its notes and relies on the direction outlined in the statute. *See McCoy*, 2020 WL 7050097, at *7 ("What § 3582(c)(1)(A) requires is that sentence reductions be consistent with 'applicable policy statements.' And here, that consistency requirement simply is not implicated, for the threshold reason that there currently exists no 'applicable policy statement.'" (brackets omitted)).

Even if the Court were to look past the plain language of both the statute and the Guideline, it is undisputed that the First Step Act was passed in an effort to reduce incarceration, *see generally* 164 Cong. Rec. S7640–50 (daily ed. Dec. 17, 2018); *see also* Congressional Research Service, *The First Step Act of 2018: An Overview* (Mar. 4, 2019), https://crsreports.congress.gov/product/pdf/R/R45558, and that Congress amended Section 3582 in response to the BOP's underwhelming number of compassionate release motions. *See* First Step Act § 603(b), 132 Stat. at

5239 (titled "Increasing the Use and Transparency of Compassionate Release");
*see also Brooker*, 976 F.3d at 233.  To conclude, then, that the Guideline applies
only to motions brought by BOP would not undermine the intent of the passage of
the First Step Act and in particular the amendments made to the compassionate
release statute.  *See Jones*, 2020 WL 6817488, at *8 ("It would make little sense
for the courts to operate as if the BOP remains the sole gatekeeper of
compassionate release, which would reflect a bygone era that Congress
intentionally amended in the First Step Act.").

      B.      Whether Extraordinary and Compelling Reasons Exist Here

Unfettered by USSG § 1B1.13, the Court follows Section 3582(c)(1)(A)'s
direction.  The Court finds—and it is undisputed—that Defendant has met the
administrative requirements for filing the Motion.

As an initial matter, defense counsel correctly explains that the question
before the Court is not the same question addressed at sentencing.  The Court is not
asked to determine whether the sentence previously imposed was "sufficient, but
not greater than necessary" to comply with the factors outlined in 18 U.S.C. §
3553(a)(2), but rather, to determine whether "extraordinary and compelling
reasons" warrant . . . a reduction." 18 U.S.C. § 3582(c)(1).  The Court is then
required to evaluate the Section 3553(a) factors to decide whether to reduce a term
of incarceration.  *See* 18 U.S.C. § 3582(c)(1)(A).

1.      Defendant's Stated Extraordinary and Compelling Reasons

a.      Defendant's Health

Defendant has a combination of risk factors that are concerning:  obesity, hypertension, and asthma.

i.      Obesity

The Court considers Defendant's BMI based on what it was *prior* to his COVID-19 diagnoses because any decrease in BMI due to COVID-related weight loss is not a sign of improved health.[6]  In any event, even if the Court were to evaluate Defendant's condition based on his more recent BMI of 29.9, it would be unreasonable to consider him only overweight, especially because of his recent history of obesity.

Obesity certainly places Defendant at a higher risk of problematic COVID-19 outcomes, and this is a fact the government does not dispute.  *See* ECF No. 124 at 22–23 (quoting the Ctrs. for Disease Control & Prevention ("CDC")).  Rather, the Government raises two policy objections to the Court considering Defendant's obesity:  (1) Defendant can control it, and (2) if the Court weighs Defendant's BMI too heavily in its analysis, it creates an incentive for inmates to become obese.  *See* ECF No. 124 at 25–26.

---

[6]  The Government does not challenge Defendant's assertion that the weight loss reflected in his most recent recorded weight was due to COVID-19.

Defendant generously describes this argument as "myopic." ECF No. 125 at 4. Obesity has many causes, some of which are controllable and some of which are not. *See* CDC, "Adult Obesity Causes & Consequences," https://www.cdc.gov/obesity/adult/causes.html (last visited Jan. 8, 2021). Indeed, obese people *outside of prison* are often unable to lose weight, even with access to healthy diets, exercise, and counseling. *See* CDC, "Adult Obesity Facts," https://www.cdc.gov/obesity/data/adult.html (last visited Jan. 8, 2021) (citing the obesity rate in the United States as 42.4% in 2017–2018). Assuming that obesity is always controllable for everyone in a prison ignores certain realities of prison life and indeed, human biology and nature.

The Government's argument that other defendants will now attempt to gain weight to enhance their compassionate release motions fails to acknowledge: (1) that it would be fairly obvious to courts that this sort of weight gain occurred and (2) the inmates themselves who might try to gain weight are certainly aware that obesity increases the likelihood of COVID-19 complications and death (otherwise, why would they believe gaining weight would help their cause). This further begs the question of why an inmate would willfully gain weight to support a compassionate release motion that might nevertheless fail, particularly when gaining the weight only increases mortality (both due to COVID and in general).

The Court concludes that Defendant's obesity places him at an increased risk of severe illness from COVID-19.

### ii.      Hypertension

It is undisputed that Defendant suffers from hypertension, *see* ECF No. 116-1 at 9; ECF No. 124 at 27, which might put him at increased risk of severe illness from COVID-19.  *See* CDC, "People with Certain Medical Conditions," https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions%2Fgroups-at-higher-risk.html (last visited Jan. 8, 2021).

### iii.      Asthma

The CDC reports that those with "moderate-to-severe" asthma might be at increased risk for severe illness from COVID-19.  *Id.*  The Government contends that Defendant's asthma is not so serious, and points to a billing code that appears in Defendant's BOP medical records as proof of the degree of Defendant's asthma. *See* ECF No. 124 at 26.  That code is for "unspecified asthma, uncomplicated." *Id*. The Government then contends—without citation to any authority—that another billing code is required for more serious forms of asthma.  *See id.* at 26–27.

The Court is more persuaded by the BOP's substantive medical records, which describe Defendant as having a "significant history of asthma,"  ECF No. 116-1 at 9; *see* ECF No. 125 at 9 (quoting ECF No. 119 at 7), for which he takes a large number of medications, *see* ECF No. 116-1 at 9–11 (explaining Defendant

13

takes the following medications for asthma:  Albuterol, Fluticasone Propionate, Ipratropium Bromide, Mometasone Furoate, and Montelukast Sodium).  Those records demonstrate that Defendant may have a "moderate-to-severe" asthma condition such that he might be at increased risk of severe illness from COVID-19.

iv.      Defendant's Two Prior COVID-19 Diagnoses

Defendant has dodged more than one bullet.  He has now been infected with the coronavirus twice, and, at least on the second occasion, suffered through concerning episodes, which include, but are not limited to, occurrences of vomiting, intense headaches, coughing, increased blood pressure, muscle restrictions, chest pressure, and shortness of breath.  *See* ECF No. 116-4. Thankfully, his oxygen levels were consistently in normal ranges.  *See id*.

Defendant is proof that reinfection from COVID-19 is possible. Significantly, he suffered more severe symptoms during his second bout with COVID-19.  While the Court cannot predict whether another reinfection would result in even more serious symptoms, it recognizes that it similarly cannot assume that, because Defendant survived two rounds against COVID-19 relatively intact, he would necessarily survive a third.

The Court therefore finds that the combination of Defendant's medical conditions places him at greater risk of severe illness from COVID-19.

b.     Conditions at MCC San Diego

Due to Defendant's recent transfer to MCC San Diego, the record before the Court is limited regarding his conditions at that facility.  The Court notes that MCC San Diego has a less than one percent rate of active COVID infections for inmates. Without further information, the Court cannot conclude that there are extraordinary and compelling reasons to grant the Motion, but denies it without prejudice in the event a fuller record is developed or conditions at MCC San Diego meaningfully worsen.  The Court therefore finds it useful to evaluate the Section 3553(a) factors at this stage, because should conditions change, it prefers an expeditious resolution of any renewed or future motion.

2.     Section 3553(a) Factors

*The nature and circumstances of the offense and the history and characteristics of the defendant*

It is impossible to quantify methamphetamine's devastation in the islands. Perhaps more than any other drug, it has severely (and in some cases permanently) damaged our families and communities.  Defendant contributed to this by repeatedly transporting pounds of methamphetamine to Hawai'i, and then returning to the mainland with the cash proceeds to pay his boss.

In mitigation, Defendant's crime involved neither violence nor guns and was fueled in part by his own drug addiction.  While Defendant's behavior was reprehensible and dangerous, it was not rooted in malice or greed.

15

Defendant had a lengthy criminal history prior to his arrest here, with poor performance while under supervision. In mitigation, none of his prior convictions were for violence or threats of violence. All of his prior convictions were either related to driving with a suspended license,[7] drug possession, or drug possession for sale.

Defendant's performance while incarcerated has been mixed. He has had four violations, but three of them occurred nine or more years ago. He has also taken advantage of a wide variety of programming in the BOP, including completing Basic Carpentry and obtaining his GED. *See* ECF No. 129-1.

> *The need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and to provide just punishment for the offense*

Thirteen years is a long sentence for someone whose prior longest term of incarceration was eight months, particularly here where the crime was a non-violent drug offense. *See* ECF No. 116-1. The Court doubts that releasing Defendant now would cause him to believe he received a slap on the wrist for what he did, or that his crime was worth the risk of a thirteen-year incarceration.

---

[7] The Court notes that five of Defendant's criminal history points were for driving offenses.

> *The need to afford deterrence to criminal conduct and to protect the public from further crimes of defendant*

Defendant was in his early-to-mid-thirties when he committed his crime and now is in his late forties.   The Court expects that, with age, Defendant is less likely to easily re-engage in the type of criminal behavior he once did.  A further mitigating consideration is that upon his release, Defendant will serve a term of ten years of supervised release, which will increase the likelihood that Defendant will serve a law-abiding life.

> *The need to avoid unwarranted sentencing disparities*

Releasing Defendant would not result in unwarranted sentencing disparities. The primary defendant in this case (and the man who supervised Defendant's trafficking) is now dead, having never been arrested for the crime.  *See* ECF No. 100.  The less culpable codefendant, Veronica Holguin, received a significantly shorter sentence of 65 months.  ECF No. 68.

In sum, the Section 3553 factors weigh at least somewhat in Defendant's favor.

III.    CONCLUSION

For the foregoing reasons, the Court DENIES the Motion WITHOUT PREJUDICE.  The Court requests that, should Defendant renew the motion or file a new motion based on conditions at MCC San Diego, defense counsel also consult the United States Probation Office and provide the Court with updated and more

17

thorough information regarding a release plan.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai'i, January 8, 2021.



Jill A. Otake
United States District Judge

Cr. No. 07-00624 (02) JAO, *United States v. Cano*; ORDER DENYING WITHOUT PREJUDICE DEFENDANT'S
MOTION FOR REDUCTION IN SENTENCE